# 22-2748

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

EVAN K. HALPERIN REVOCABLE LIVING TRUST,

*Petitioner-Appellant,*

—against—

CHARLES SCHWAB & CO. INC.,

*Respondent-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR PETITIONER-APPELLANT

BARRY A. FURMAN, ESQ.
PHINORICE J. BOLDIN, ESQ.
RACHEL REMPEL, ESQ.
FINEMAN KREKSTEIN & HARRIS, P.C.
1801 Market Street, Suite 1140
Philadelphia, Pennsylvania 19103
(215) 893-9300

*Attorneys for Petitioner-Appellant*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ..................................................... iii

I.  STATEMENT OF SUBJECT MATTER AND APPELLATE
    JURISDICTION ............................................................. 1

II. STATEMENT OF ISSUES PRESENTED ............................... 1

III. STATEMENT OF THE CASE .......................................... 2

    A. The Parties and the Agreement to Resolve Disputes Via an
       Arbitration Conducted By the Financial Industry Regulatory
       Authority ("FINRA") .................................................. 2

    B. The Trust's Claim Seeking Losses Sustained Due to
       Unexplained "Interruptions" While the Trust Was On the
       Platform ............................................................... 2

    C. Throughout the Discovery Process, Schwab Withheld, on
       the Basis of Privilege and/or Unfamiliarity, Information,
       Documents and Data Regarding, *Inter Alia*, Schwab's
       Security Systems that Monitor and Effect User Sessions
       After Login, Including its FDS, and ESI Showing When the
       Platform Logged Off the Trust and Why ........................... 5

    D. Because Schwab Never Stated that "Fraud Parameter
       Reports Related To Activity Within A Session Do Not
       Exist," the Panel Refused To Hear Evidence Pertinent and
       Material to the Trust's Case and Thereby Denied the Trust
       a Meaningful Opportunity to Present Its Case .................... 10

    E. The Arbitration Award, Petition to Vacate, Cross-Petition
       and District Court's Decision ..................................... 13

IV. SUMMARY OF THE ARGUMENT ................................... 14

V.  ARGUMENT ............................................................. 18

A. Standard of Review - Clear Error for Findings of Fact, *De Novo* for Questions of Law and Mixed Questions of Law and Fact ................................................................... 18

B. This Court Should Review the District Court's Decision *De Novo* Because this Case Presents Mixed Questions of Law and Fact ................................................................... 21

C. This Court Must Vacate the Award Because the District Court Erred - No Ground for the Decision Can Be Inferred From the Facts of the Case as the Panel Excluded Evidence Pertinent and Material to the Trust's Case and Thereby Deprived the Trust of its Right to a Fundamentally Fair Hearing ................................................................. 22

VI. CONCLUSION ........................................................ 34

# TABLE OF AUTHORITIES

PAGE(S)

## Cases

*A.H. by & through Hester v. French*,
985 F.3d 165 (2d Cir. 2021) .................................................. 22

*Areca, Inc. v. Oppenheimer & Co.*,
960 F. Supp. 52 (S.D.N.Y. 1997) ......................................... 20

*Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*,
448 F.3d 573 (2d Cir. 2006) ................................................. 19

*Cartier v. Lussier*,
955 F.2d 841 (2d Cir. 1992) ................................................. 19

*U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*,
200 L. Ed. 2d 218, 138 S. Ct. 960 (2018) ............................... 18

*D. H. Blair & Co., Inc. v. Gottdiener*,
462 F.3d 95 (2006) ............................................................. 21

*Duferco Int'l Steel Trading v. Klaveness Shipping A/S*,
333 F.3d 383 (2d Cir. 2003) ................................................. 21

*In re Interdigital Commc'ns Corp. & Samsung Elecs. Co.*,
528 F. Supp. 2d 340 (S.D.N.Y. 2007) .................................... 20

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
729 F.3d 99 (2d Cir. 2013) .................................................. 18

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007) ................................................. 18

*Prima U.S. Inc. v. Panalpina, Inc.*,
223 F.3d 126 (2d Cir. 2000) ......................................... 18, 22

*Savino v. City of New York*,
331 F.3d 63 (2d Cir. 2003) .................................................. 19

*Sheppard v. Beerman*,
94 F.3d 823 (2d Cir. 1996) .................................................. 19

*Supreme Oil Co. v. Abondolo*,
    568 F. Supp. 2d 401 (S.D. NY. July 31, 2008) .......................... 20

*Tempo Shain Corp. v. Bertek, Inc.*,
    120 F.3d 16 (2d Cir. 1997) .......................................... 20, 31

*Weaver v. Brenner*,
    40 F.3d 527 (2d Cir. 1994) ............................................. 19

**Statutes**

9 U.S.C. §§ 1 et seq., Federal Arbitration Act ("FAA")...................... 4

9 U.S.C. §10(a)(2) ........................................................ 14

9 U.S.C. §10(a)(3) .................................................. 13, 14, 20

28 U.S.C. §1291............................................................ 1

**Regulations**

FINRA Rule 12508(a) ...................................................... 7

**Other Authorities**

*U.S. Department of Commerce, National Institute of Standards and
    Technology, Glossary* ................................................. 29

## I. STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This is an appeal of the District Court's denial of the *Petition to Vacate Arbitration Award* filed by Appellant Evan K. Halperin Revocable Living Trust (the "Trust") on September 30, 2021, regarding an Arbitration Award rendered on August 30, 2021 in *Evan K. Halperin Revocable Living Trust v. Charles Schwab & Co., Inc.*, FINRA Case No. 19-03738 (the "*Petition to Vacate*"). The District Court's jurisdiction is based on diversity of citizenship between a citizen of the State of New York, the Trust, and a citizen of the State of California, Appellee Charles Schwab & Co., Inc. ("Schwab"). The amount in controversy exceeds $75,000.

On September 20, 2022, the District Court entered final judgment, denying the *Petition to Vacate*. The Trust timely filed a Notice of Appeal on October 21, 2022. Accordingly, this Court has appellate jurisdiction under 28 U.S.C. §1291.

## II. STATEMENT OF ISSUES PRESENTED

A. Whether this Court should vacate the Arbitration Award ("Award") because the District Court erred in confirming the Award rendered by an Arbitration Panel that refused to hear evidence pertinent and material to the controversy and thereby deprived the Trust of its right to a fundamentally fair hearing?

## III. STATEMENT OF THE CASE

### A. The Parties and the Agreement to Resolve Disputes Via an Arbitration Conducted By the Financial Industry Regulatory Authority ("FINRA").

Appellant Evan K. Halperin Revocable Living Trust (the "Trust") is a vehicle by which Evan K. Halperin, the settlor, trustee and beneficiary of the Trust, trades securities. A-40. Charles Schwab & Co., Inc. ("Schwab") is, *inter alia*, a financial services firm that operates "schwab.com," an online securities trading platform (the "Platform"). Schwab is also a member of the Financial Industry Regulatory Authority ("FINRA"). A-1178, ¶ 8.

On or about February 21, 2013 the Trust opened an account with Schwab and executed agreements, including the Schwab One® Trust Account Application Agreement (the "Account Agreement"), that allowed the Trust to trade on the Platform. Per the arbitration clause in the Account Agreement, the parties agreed to resolve any disputes through an arbitration conducted by and in accordance with the rules and regulations of FINRA. A-30-31, §§ 15-16.

### B. The Trust's Claim Seeking Losses Sustained Due to Unexplained "Interruptions" While the Trust Was On the Platform.

The Trust began trading on the Platform in March 2013. A-42. At all times relevant, the Trust used a security token (the "Token") as a second factor for logging onto the Platform. The top of the Token reads "Charles Schwab" and the

bottom of the Token reads "Verisign ID protection." *See Motion for Judicial Notice* (the "Motion"), Exhibit "1", filed contemporaneously with this brief.

In March 2017, the Trust began trading options on the Platform. A-42. The Trust performed options trades from March 2017 through December 2017, without incident. On or about January 2, 2018, the Platform began logging off the Trust, inexplicably and involuntarily, while the Trust was using the Platform (the "Interruptions"). *Id*. Once the Platform logged off the Trust, the Trust could not input information to begin trades or complete trades it had started. A-1164; A-1178, ¶ 10.

When, during the first month of experiencing the Interruptions, the Trust was unable to remedy the problem through adjustments made on its end, the Trust complained to Schwab. A-1164; A-1178-79. When the Trust complained, initially, Schwab failed to tell the Trust that the Platform was logging it off, intentionally. In fact, the Trust did not learn that the Platform was logging it off, intentionally, until November 12, 2018. A-1165.

On November 12, 2018, Rick Eastman ("Eastman"), a technical support representative employed by Schwab, responded to the Trust's call about the Interruptions. Based on his investigation of the Trust's complaint, Eastman told the Trust, "[o]ur system is throwing you out . . . . I can see scores and I can see that

we're blocking you … [w]e're intentionally trying to stop you … [and] I'm looking back for the last 3 months." A-1179; A-1241; A-1271-72.

Eastman surmised that a virtual private network (the "VPN") caused the Interruptions. A-1240; A-1271-72. However, the Trust did not use a VPN. *Id.* Consequently, on behalf of the Trust, counsel for the Trust retained Digital Forensics Expert, Kevin J. Baker, EnCE, ACE, to opine on the source and/or cause of the Interruptions. A-44; A-1164; A-1176, ¶ 1.

Baker is a "subject matter expert in the field of digital forensics and holds the position of Director, Digital Forensics at Marcum … with over 15 years of experience as a digital forensics specialist and … [has] been qualified as an expert in the field of digital forensics in federal court and other jurisdictions." A-245, ¶ 2; A-1177 ¶; A-1248, ¶ 2. Baker has extensive experience with "eDiscovery review platforms, production of ESI [electronically stored information] and analysis of ESI." *Id*.

Baker performed a forensic analysis of the Trust's computer and its computer environment. A-44; A-1195. Based on his forensic analysis, Baker concluded that the Platform, specifically "Schwab's security systems such as a fraud detection system … caused the Interruptions." A-1164; A-1185, ¶ 11.

On January 6, 2020, the Trust filed a claim (the "Claim") and a Submission Agreement with FINRA, pursuant to the Federal Arbitration Act, 9 U.S.C.A. §§ 1

et seq. ("FAA"). The gravamen of the Claim, which asserts, *inter alia*, breach of contract, unfair competition, intentional misrepresentation and negligence claims, is that the Platform was defective. The Claim alleges, due to the Platform defects, the Trust experienced connectivity problems and involuntary log offs while the Trust was trading or attempting to make a trade. A-40-55. The Trust claimed that the defects caused the Trust to sustain losses. *Id.*

In February 26, 2020, Schwab filed a Submission Agreement and a Statement of Answer, asserting general denials of the Trust's claims. A-90; A-119.

**C.      Throughout the Discovery Process, Schwab Withheld, on the Basis of Privilege and/or Unfamiliarity,  Information, Documents and Data Regarding, *Inter Alia*,  Schwab's Security Systems that Monitor and Effect User Sessions After Login, Including its FDS, and ESI Showing When the Platform Logged Off the Trust and <u>Why</u>.**

The parties exchanged discovery requests in March 2020. A-1292. Through the discovery process, the Trust sought, *inter alia*, electronically stored information pertaining to security systems that monitor and affect user sessions after login ("post login session activity ESI"), including the fraud detection system ("FDS") used by Schwab (the "Discovery Requests").  A-1298.

Based on the nature of the Discovery Requests, Schwab knew what information the Trust sought and needed to make out its claim.   Moreover, Schwab knew that the information sought was within its exclusive custody and control. *See* A-1128-29, ¶ 14. Yet, from the outset, Schwab played the game of

"hide the ball".  Schwab refused, repeatedly, to produce the material vital to the

Trust's case, particularly, documents related to Schwab's post-login session

activity ESI, including its FDS.  *See* A-1186-87; A-1126; A-1127-29 ¶¶ 4-6, 7,

10-14.

On June 30, 2020, after: (a) reviewing (i) a motion to compel filed by the

Trust on May 26, 2020 regarding Schwab's deficient written responses and

document production to the Discovery Requests (the "May 26, 2020 Motion");[1]

and (ii) Schwab's responses thereto;[2] and (b) following a hearing/conference on the

May 26, 2020 Motion, the Panel entered its ruling.  The Panel Ordered Schwab to

"provide [the] outstanding discovery to [the Trust] on or before July 30, 2020" (the

"June 30, 2020 Order").  A-122.   The Panel refused the Trust's request that it

sanction Schwab.  *Id.*

Despite the dictates of the June 30, 2020 Order, Schwab's second

production, served on or about July 30, 2020, too, was woefully deficient.  For the

second time, Schwab's document production, although voluminous, was devoid of,

*inter alia*, "information from security systems that monitor and affect user sessions

after login …," information vital to the Trust's case.   A-1249-53, ¶¶ 5-7, 9-11, 14-

15.  Moreover, for the second time, Schwab's written responses, replete with

---

[1] A-592-93
[2] A-713-76

objections based on claims of "unfamiliarity" with the documents requested and privilege, failed to "specifically identify which documents or requested information it was objecting to and why," as required by FINRA Rule 12508(a). A-146-47.

The Trust attempted to resolve Schwab's second deficient production without Panel intervention. On September 2, 2020, the Trust's counsel convened a video conference call between counsel for Schwab, Baker and himself, to dispel any confusion or misunderstanding Schwab had about the documents and information the Trust sought. A-1190, ¶ 17; A-1250, ¶7. During the conference call, Baker delineated six (6) categories of documents and information the Trust sought, all of which were within Schwab's exclusive custody and control. A-1250-51, ¶7. The list included, but was not limited to, "information about [Schwab's] security systems, including … user monitoring systems and other security devices detailing how [Schwab] monitors users, what actions those systems take to protect users and logs of any such actions that affected [the Trust's] sessions." *Id.* Schwab's third production, served on September 2, 2020, after the conference call, again, was devoid of, *inter alia*, "information from security systems that monitor and affect user sessions after login … information central to …" the Trust's case. A-1250; A-1252-53, ¶¶8, 13-15.

On December 16, 2020, the Panel conducted a hearing/telephone conference call on two (2) motions to compel and a motion for sanctions filed by the Trust on September 9, 2020 (the "September 9, 2020 Motions").[3]  On December 22, 2020, after considering the September 9, 2020 Motions, Schwab's responses thereto and any discussions during the December 16, 2020 hearing/conference call, the Panel again Ordered Schwab to produce documents responsive to numerous requests propounded by the Trust, to which Schwab had objected, repeatedly (the "December 22, 2020 Order).  A-270-72.

On January 28, 2021, Schwab served a fourth production, purportedly, in response to the December 22, 2020 Order.  For the fourth time, Schwab's production was devoid of the specific data needed for Baker to complete his analysis of the source and cause of the Interruptions.  A-1182-83, ¶ 19.

Frustrated with Schwab's deficient productions and its refusal to produce the data pertinent to the Trust's case, on March 12, 2021, the Trust filed a Motion to Enforce the Panel's Order of December 22, 2020 (the "Motion to Enforce").  A-1012-14. The Trust took this action because Schwab's production was not only devoid of the post login activity ESI that the Trust requested, but also incomplete and inconsistent with documents previously produced.  Moreover, the production was replete with documents related to accounts other than the Trust account (for

---

[3] A-137-268.

example, it contained, *inter alia*, data for a user from Huntington Station, NY, 11746; the Trust is housed in Huntington, NY, 11743). A-1263, ¶ 17; A-1129; A-1180, ¶ 19. Through the Motion, the Trust urged the Panel to (a) find Schwab in violation of the December 22, 2020 Order and (b) sanction Schwab. A-274-77. On April 21, 2021, apparently, based on Schwab's claims that it did not have post log in activity ESI related to the Trust's trading activities, the Panel denied the Trust's Motion to Enforce, without oral argument and without explanation. A-280.

The Trust deemed it "inconceivable" that Schwab did not have post log in activity ESI related to the Trust. A-1185, ¶ 32. Consequently, on May 7, 2021, the Trust filed a Motion for Order of Production, requesting that Schwab produce the records that the Trust maintained Schwab was withholding (including, *inter alia*, In-Session (or post login) Activity ESI related to the trading activities of the Trust) and the corresponding custodians of records. A-282-310.

The Panel denied the Motion for Order of Production (the "June 24, 2021 Order"). However, in the June 24, 2021 Order, the Panel directed Schwab to provide "a Declaration/Affirmation affirming that fraud parameter reports related to activity within a session do not exist." A-312-14.

**D.    Because Schwab Never Stated that "Fraud Parameter Reports Related To Activity Within A Session Do Not Exist," the Panel Refused To Hear Evidence Pertinent and Material to the Trust's Case and Thereby Denied the Trust a Meaningful Opportunity to <u>Present Its Case</u>.**

On July 2, 2021, in apparent response to the June 24, 2021 Order, Schwab produced the *Confidential Declaration of Kostas Konstantinides for Use In FINRA Arbitration Case No. 19-03738* (the "Konstantinides Declaration").  A-1116.   Per the Konstantinides Declaration, Konstantinides is the "Director [of] Client Authentication" at Schwab.  A-1288, ¶ 2.

The Konstantinides Declaration is silent as to Schwab's fraud parameter reports and/or fraud detection systems related to user in-session activity.  In fact, the focus of the Konstantinides Declaration is the Risk Based Authentication ("RBA") Report which, as Konstantinides writes, relates to user *login* authentication issues, not user issues *post login*.  *Id. generally.*  Consequently, via letter motion dated July 8, 2021, the Trust requested that the Panel rule, on the first date of the upcoming arbitration hearing, that Schwab failed to comply with the June 24, 2020 Order (the "July 2021 Letter Motion").  A-316-17.

The Panel conducted an in-person arbitration hearing (the "Hearing") from July 12, 2021 through July 16, 2021.  On July 12, 2021, the first day of the Hearing, the Panel entertained argument on the July 2021 Letter Motion and took it under advisement.  On July 15, 2021, the Panel denied the Trust's request,

effectively denying the Trust the ability to secure and present data pertinent and material to its case. The Panel thereby denied the Trust a meaningful opportunity to present its case. A-16-17, ¶¶ 18-19.

During the course of the Hearing, the Trust called three (3) witnesses, Evan Halperin, Kevin J. Baker, EnCE, ACE and Edward M. Waddington. A-1296. Baker addressed the digital forensics components of the Trust's case.

As noted above, based on his forensic analysis of the Trust's computer and its environment, Baker concluded that the Platform, specifically its security systems such as fraud detection systems, caused the Interruptions. A-1125-26, ¶ 3. Moreover, Baker testified (both in-person and through his declarations) that Schwab's claims that it does not maintain a fraud detection system that records post log in activity ESI is "inconceivable." Baker explains,

> During a call between Claimant and technical support representative Rick Eastman ("Eastman") (Halperin-Schwab Prod-16003), Eastman stated, "our system is throwing you out", "we are blocking you. I can look at, I can see the scores and I can see that we're blocking you", "you're riding high on the, on the kick 'em out scale", "we're intentionally trying to stop you", and "I'm looking just back for the last 3 months."

A-1127, ¶ 8.

Additionally, Baker testified that Eastman's statements, which relate to the Trust's activity post log in, mean that Schwab's security systems were blocking the Trust. Baker also testified that Eastman's statements "clearly indicate that, during

the call, he was looking at data from a different security system that was interfering with [the Trust's] sessions." A-1193-84, ¶ 24.  Moreover, as Baker noted, not only was Schwab's security system blocking the Trust from trading but, based on Eastman's comments, the system maintained the corresponding logs for at least three (3) months.  A-1179, ¶ 13.

With respect to the various documents produced by Schwab, purportedly in response to Orders directing Schwab to produce the post login activity ESI, *et. al.*, Baker explained,

> However, the only report with scores that Schwab has produced is a single Risk Based Authentication report ("RBA Report") with scores for each login attempt. The RBA Report does not contain any information about the actions of Schwab's security systems after … [the Trust] logged in.

> By definition, a Risk Based Authentication system addresses authentication security and not security related to user activity after login. Schwab states that a negative score on the RBA Report shows a successful login and that all of … [the Trust's] scores were negative, indicating [the Trust] never had trouble logging in. Eastman's statements produced by Schwab clearly indicate that, during the call, he was looking at data from a different security system [than the system] that was interfering with [the Trust's] sessions.

> In my experience, a FDS monitors user activity well beyond the account verification process used at login. In fact, Schwab states on its website that it uses "Multi-layered technology" that includes "automated alerts, an identity verification process and rigorous monitoring." (Emphasis added) The SchwabSafe webpage is attached as Attachment 2 "Rigorous monitoring" would occur after the "identity verification process" when a user first logs into the Platform. From the information I have reviewed and the statements made on Schwab's website, it is

inconceivable that Schwab does not monitor user activity after a user successfully logs into the Platform.

A-1127-28, ¶¶ 8-10.

### E. The Arbitration Award, Petition to Vacate, Cross-Petition and the District Court's Decision

On August 30, 2021, FINRA served the Parties with the award issued by the Panel (the "Award"). The Panel denied the Trust's claims, in their entirety and ordered the Trust to pay Schwab $100,000.00 in attorneys' fees and $42,750.22 in costs. In addition, the Panel assessed $22,500.00 in hearing session fees against the Trust. A-1297.

On September 30, 2021, the Trust filed the *Petition to Vacate*. *Id*. In support of the *Petition to Vacate*, the Trust maintained that the Panel: (a) refused to hear evidence pertinent and material to the controversy, thereby denying the Trust a full and fair opportunity to present its case; and (b) was partial to Schwab. A-10; A-17; A-1303.

On September 19, 2022, the District Court, P. Kevin Castel, United States District Judge, issued an Opinion and Order, denying the Trust's *Petition to Vacate* and granting the *Cross-Petition*, in its entirety. A-1308.

With respect to the Trust's claim under section 10(a)(3), the District Court held, "[t]he Panel did not '[r]efuse to hear evidence pertinent and material to the controversy' by not compelling Schwab to produce In-Session Activity ESI that it

13

[Schwab] represented in a declaration, under penalty of perjury, does not exist." A-1303. The District Court held that the Panel "gave the Trust more than 'an adequate opportunity to present its evidence and argument' … [and t]he Trust's dissatisfaction with the Panel's rulings and Award does not render the Arbitration fundamentally unfair within the meaning of section 10(a)(3)." A-1303-04.

With respect to the Trust's claim under section 10(a)(2), the District Court found that the Panel "carefully considered argument and evidence from both parties in deciding the Trust's several motions and in conducting the … hearing." A-1305. In that regard, "[n]othing in the record speaks of the Panel's 'evident partiality' in favor of Schwab …." *Id*.

## IV. <u>SUMMARY OF THE ARGUMENT</u>

This Court should vacate the Award and reverse the decision of the District Court because no ground for the decision can be inferred from the facts of this case.

From the outset of the arbitration proceedings, the Trust sought from Schwab, information, documents and data regarding, *inter alia*, electronically stored information pertaining to security systems that monitor and affect user sessions after login, including the fraud detection system that Schwab maintains for users trading on the Platform. From the outset, the Trust identified this information as material and pertinent to its case.

Throughout the discovery process, Schwab withheld information and data that the Trust sought, including the post login activity ESI, based on, *inter alia*, claims of "unfamiliarity" and privilege. Schwab maintained this position despite the fact that Eastman, a technical support representative employed by Schwab, referred to data of this nature in November 2018, when he attempted to remedy the Trust's complaints about the Interruptions. Ultimately, Schwab (a) claimed that it had produced all documents and/or information responsive the Trust's requests and (b) represented that the post login activity ESI, including FDS data, did not exist.

Baker deemed it "inconceivable" "that Schwab does not monitor user activity after a user successfully logs into the Platform." Consequently, the Trust moved, again, to compel the information. Via an Order dated June 24, 2021, the Panel Ordered Schwab to provide "a Declaration/Affirmation affirming that fraud parameter reports related to activity within a session do not exist."

On July 2, 2021, in apparent response to the Order, Schwab produced the Konstantinides Declaration. The Konstantinides Declaration, however, is silent as to Schwab's fraud parameter reports and/or fraud detection systems related to user in-session activity. In fact, the focus of the Konstantinides Declaration is the RBA Report that, as Konstantinides writes, relates to user *login* authentication issues, not user issues *post login*. Nevertheless, in a decision rendered during the course of the Hearing, the Panel interpreted the Konstantinides Declaration as compliant

with its Order.  Subsequent thereto, the Panel rendered the Award, finding against the Trust and in favor of Schwab.

The Trust petitioned to vacate the Award based, *inter alia*, on the fact that the Panel refused to hear evidence material and pertinent to its case and thereby deprived it of its rights to a fundamentally fair hearing.  In opposition to the *Petition to Vacate*, Schwab submitted, *inter alia*, the Marinzel Declaration, wherein Marinzel declares that the Konstantinides Declaration complies with the June 24, 2021 Order.  The District Court reviewed the record, *de novo*, and, citing the Konstantinides Declaration and the Marinzel Declaration, found that the Konstantinides Declaration affirmed that, "fraud parameter reports related to activity within a session do not exist."  The District Court affirmed the Award.

The Trust maintains that the District Court erred. The District Court misinterpreted the Konstantinides Declaration.  In fact, as the Trust explains, neither the Konstantinides Declaration nor the Marinzel Declaration complies with the Order.  Neither declaration affirms that, "fraud parameter reports related to activity within a session do not exist."   In fact, each is completely devoid of any reference to "fraud detection systems" and/or "fraud parameter reports" related to post login activity.

As the Trust explains, however, Eastman's statements  that, "our system is throwing you out", "we are blocking you … I can see that we're blocking you" …

we're intentionally trying to stop you [and] I'm looking just back for the last 3 months," reveal that Schwab employed a fraud detection system that scores and stores data related to post login activities of its users.  In addition, the VeriSign patent that Schwab secured in 2006, entitled "*System and Method for Network-Based Fraud and Authentication Services,*"(the "VeriSign Patent), reveals that Schwab employed a fraud detection system that monitors the in-session activities of its users, generates scores related to the activities and stores the data.  Schwab added to the system subsequent thereto.

In 2015, Schwab secured a patent entitled the "*System and Method for Authenticating Users Using Weak Authentication Techniques, With Differences for Different Features*"(the "2015 Patent*),* which generates scores throughout the user's session on the Platform; not simply at the point of login; and it stores the data collected.  Moreover, in 2018 Schwab secured a patent entitled the "*System and Method for Handling User Request for Web Services*," (the 2018 Patent"), which also describes the mechanism by which the Platform monitors in-session activities of its users and generates data, generates scores and stores the data related to those activities; the type of in-session, post login ESI data that Schwab failed to produce during the course of discovery.

Furthermore, as the Trust explains, Eastman's statements, a plain reading of the Konstantinides Declaration, Baker's Declarations and the aforementioned

patents reveal, Schwab withheld information critical to the Trust's case; the Panel

misinterpreted the Konstantinides Declaration; and, as a result thereof, the Panel

refused to hear evidence critical to the Trust's case and denied the Trust its rights

to a fundamentally fair Hearing.  Therefore, the District Court erred; no ground for

the decision can be inferred from the facts of this case.  This Court should vacate

the Award and reverse the District Court's decision, in its entirety.

## V.    <u>ARGUMENT</u>

### A.    Standard of Review - Clear Error for Findings of Fact, *De Novo* for Questions of Law and Mixed Questions of Law and <u>Fact</u>.

This Court reviews, *de novo*, a district court's decision to confirm or vacate

an arbitration award for questions of law and "clear error" for findings of fact.

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.,* 729 F.3d 99,

103 (2d Cir. 2013) (citing *Scandinavian Reins. Co. v. Saint Paul Fire & Marine

Ins. Co.,* 668 F.3d 60, 71 (2d Cir. 2012)).

Where the district court's decision involves mixed questions of law and fact,

however, this Court should apply the *de novo* standard of review.  *See U.S. Bank

Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 200 L.

Ed. 2d 218, 138 S. Ct. 960 (2018); *see also Prima U.S. Inc. v. Panalpina, Inc.*, 223

F.3d 126, 129 (2d Cir. 2000) ("This court reviews conclusions of law, as well as

mixed questions of law and fact, *de novo*.") (internal citation omitted); *McCarthy*

*v. Dun & Bradstreet Corp.*, 482 F.3d 184, 204 (2d Cir. 2007); *Beth Israel Med.*
*Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 580
(2d Cir. 2006).

Mixed questions of law and fact exist where there are disputed issues of fact,
and where the existence of these disputed issues of fact resulted in a dismissal of
the claim where the disputed facts should have prevented the dismissal of the
claim. *See Cartier v. Lussier*, 955 F.2d 841, 844 (2d Cir. 1992) ("Whether disputed
facts are material to resolving the applicability of the doctrine is a legal question
subject to our *de novo* review."); *Sheppard v. Beerman*, 94 F.3d 823, 827 (2d Cir.
1996) ("When there has been a dismissal on the grounds of qualified immunity,
whether there are disputed issues of fact that should have prevented the dismissal is
also subject to our *de novo* review"); *Weaver v. Brenner,* 40 F.3d 527, 533 (2d Cir.
1994) ("when material factual issues are present, a district court decision does not
finally determine any claims of right."); *Savino v. City of New York*, 331 F.3d 63,
72 (2d Cir. 2003).

Here, the District Court misinterpreted the compliance of the Konstantinides
Declaration with the Panel's June 24, 2021 Order. That misinterpretation
constitutes a disputed fact that subjects the District Court's decision to this Court's
*de novo* review.

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §10(a)(3), "a federal court may vacate an arbitration award if the arbitrators … [committed] misconduct … in refusing to hear evidence pertinent and material to the controversy …." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997). Courts interpret FAA §10(a)(3) to mean that an award will undergo evidentiary review if the arbitrators violated the concept of "fundamental fairness" in reaching their decision. *Id*. In that regard, a federal court's review of an arbitration award is "restricted to determining whether the procedure was fundamentally unfair." *Id*.

Arbitrators have "great latitude to determine the procedures governing their proceedings and to … control evidentiary proceedings." *Supreme Oil Co. v. Abondolo*, 568 F. Supp. 2d 401, 408 (S.D. NY. July 31, 2008). While arbitrators are not required to hear all of "the evidence proffered by a party … [they] must give each [party] … an adequate opportunity to present its evidence and argument." *Tempo Shain Corp., supra* at 20. An arbitrator's refusal to hear evidence pertinent and material to a party's case subjects the arbitration award to evidentiary review and *vacatur,* if the decision deprived the party of a fundamentally fair arbitration. *Id*. *See also*, *In re Interdigital Commc'ns Corp. & Samsung Elecs. Co*., 528 F. Supp. 2d 340, 351 (S.D.N.Y. 2007); and *Areca, Inc. v. Oppenheimer & Co.*, 960 F. Supp. 52, 54 (S.D.N.Y. 1997).

The party seeking to vacate an arbitration award has the burden of proving the proceeding was "fundamentally unfair." *D. H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2006). The burden of proof is very high as courts give arbitrators great deference in rendering their decisions. *Duferco Int'l Steel Trading v. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003). Due to the deference afforded arbitrators, federal courts vacate arbitration awards only where they can infer no ground for the decision from the facts of the case. *D. H. Blair & Co., Inc., supra*.

**B**.    **This Court Should Review the District Court's Decision *De Novo* Because this Case Presents Mixed Questions of Law and Fact**

The Trust maintains that, by failing to compel Schwab to produce post login activity ESI, the Panel refused to hear evidence pertinent and material to the controversy. The Panel thereby rendered the proceedings fundamentally unfair to the Trust. The Trust maintains that the District Court erred in affirming the Award. As is explained more thoroughly below, the Trust meets the high burden of proof. This Court must vacate the Award at issue because no ground for the District Court's decision can be inferred from the facts of this case.

Citing *City of New York v. Mickalis Pawn Shop*, LLC, 645 F.3d 114, 136 (2d Cir. 2011), the District Court examined the record *de novo*. A-1299. The District Court searched the record for a "barely colorable justification" for the Award and zeroed in on the Konstantinides Declaration. A-1299. *See* A-1290-1308. Citing the

21

Konstantinides Declaration, the District Court concluded that Schwab did not have post login activity ESI and therefore, the Panel did not refuse to hear evidence pertinent and material to the controversy. Therefore, the District Court held that the Panel did not deprive the Trust of "fundamental fairness." A-1302.

However, the District Court misinterpreted the Konstantinides Declaration. Its misinterpretation of the Konstantinides Declaration renders its opinion a mixed question of law and fact. *See, e.g., Prima*, 223 F.3d at 129 ("This court reviews conclusions of law, as well as mixed questions of law and fact, *de novo*.); *see also A.H. by & through Hester v. French*, 985 F.3d 165, 176, fn 31 (2d Cir. 2021).

Therefore, this Court should review the record, *de novo*, and vacate the Award because no ground for the decision can be inferred from the facts of the case.

**C.  This Court Must Vacate the Award Because the District Court Erred - No Ground for the Decision Can Be Inferred From the Facts of the Case as the Panel Excluded Evidence Pertinent and Material to the Trust's Case and Thereby Deprived the Trust of <u>its Right to a Fundamentally Fair Hearing</u>**

The Panel issued a straightforward and clear Order to Schwab - provide "a Declaration/Affirmation affirming that fraud parameter reports related to activity within a session do not exist." In response, Schwab filed and served the Konstantinides Declaration. Nowhere in the Konstantinides Declaration does Konstantinides write or affirm that, "fraud parameter reports related to activity

within a session do not exist"; nor can one reasonably infer such a fact therefrom. In fact, the Konstantinides Declaration is devoid of any reference to "fraud parameter reports" or "fraud detection systems" related to user in-session activity. On the contrary, the Konstantinides Declaration focuses on RBA Reports that, Schwab cannot dispute, relate to *login authentication* issues, not any issues *post login*. A-1127, ¶ 8; A-1183-84, ¶¶ 23 – 27.

That the Konstantinides Declaration falls short of declaring that "fraud parameter reports related to activity within a session do not exist" is evident in the declaration submitted by Alexandra J. Marinzel, Esquire, in apparent support of the *Cross-Petition* (the "Marinzel Declaration"). In her Declaration, Marinzel references the Konstantinides Declaration. Marinzel writes, the Konstantinides Declaration "affirmed that Schwab does not maintain certain reports for the activities of internet users after their successful logins onto the …" Platform. A-371, ¶ 35.

Notably, nowhere does Marinzel write that Konstantinides affirmed that, "fraud parameter reports related to activity within a session do not exist." Moreover, nowhere does Marinzel write that the "certain reports" that Schwab does not maintain are "fraud parameter reports" or reports related to "fraud detection systems" concerning in-session activity. In fact, Marinzel's characterization of the Konstantinides Declaration, like the Konstantinides

Declaration itself, is completely devoid of any reference to "fraud detection systems" and/or "fraud parameter reports" related to post login activity. *Id.*

The Trust maintains that Konstantinides and Marinzel refrained from representing that, "fraud parameter reports related to activity within a session do not exist" because such *reports do exist and they existed in 2018*. The existence of this information, data and Schwab's ability to generate it is evident in the statements Eastman made to the Trust in November 2018 and the patents Schwab owned in 2018.

That Schwab employed a fraud detection system that scores and stores data related to login and post login activities of its users is evident from the statements Eastman made to the Trust in 2018. Eastman told the Trust, "[Schwab's] system is throwing you out . . . I can see scores and I can see that we are blocking you … [w]e're intentionally trying to stop you." A-1127, ¶ 3; A-1242. Clearly, Eastman was correctly reciting his present sense impression of the "scores" produced on Schwab's security system that were "throwing [the Trust] out" and blocking the Trust from using the Platform, post login. Moreover, Eastman retrieved and viewed "scores" reflecting this conduct dating back three (3) months. A-1241. The details of patents owned by Schwab as of January 2018 illustrate how Eastman knew the Platform was blocking the Trust and knew that it had been blocking the Trust for at least three (3) months.

Schwab began using VeriSign Identity Protection (VIP) Fraud Detection

Service and VIP Authentication Service to "secure client login and transaction

information…" in 2006. *See* VeriSign, VeriSign Reports Second Quarter 2006

Results (July 20, 2006), https://investor.verisign.com/news-releases/news-release-

details/verisign-reports-second-quarter-2006-results, p.1, attached to Motion as

Exhibit "2" ("During the second quarter within the Internet Services Group (ISG),

VeriSign Security Services (VSS) announced that Charles Schwab selected

VeriSign to provide a full set of security services for their clients. Under the terms

of the agreement, Charles Schwab will deploy both the VeriSign Identity

Protection (VIP) Fraud Detection Service and VIP Authentication Service to

secure client login and transaction information."). The VeriSign Identity

Protection (VIP) Fraud Detection Service and VIP Authentication Service

programs are reflected in the VeriSign patent entitled *"System and Method for*

*Network-Based Fraud and Authentication Services,"* publication Number WO-

2007095242-A2, with a priority date of February 10, 2006, (the "VeriSign

Patent"), attached to *Motion* as Exhibit "3". The Token used by the Trust as a

second security factor to log onto the Platform, is a product of the VeriSign Patent.

*See VeriSign Patent,* p. 4.

The VeriSign Patent details a fraud detection system that *monitors* the in-session activities of its users*, generates scores related to that activity and stores the data*.  The VeriSign Patent reads, in pertinent part, as follows:

> 0012 – The present invention addresses the deficiencies of current solutions by providing to a network of enterprises both authentication and fraud detection services that are hosted by a third-party provider.
>
> …
>
> 0014 - Information stored in a database used by the authentication service may be used by the fraud detection service.  ... [vice versa].
>
> …
>
> 0017 - A credential refers to any electronic device or document used for authentication purposes. The value provided by a credential for validation is referred to as a credential response (e.g., an OTP ("One-Time Password") value, a digital signature, or response to a challenge-response query). For example, an OTP token (sometimes just called a token) is a hardware device credential that generates a unique code on-demand that is usually used, for example, as a second factor for authentication.
>
> …
>
> 0021- In connection with the hosted fraud detection service, each party in the fraud intelligence network shares fraud intelligence (e.g., web browser headers, IP addresses, etc.) to further maximize identify protection. By sharing transaction information from across the network, the fraud detection service can compare patterns of behavior across the participating sites in real time, and help detect and stop attacks that could not be detected with data from a single site.  The service does not require personally identifiable information to detect fraud, but can use unique pseudonyms to identify end users across the different sites.
>
> …

0026 - The relying party [Schwab] then monitors transactions associated with the user, which may include a login, purchase, click-thru, or any other activity by the user on the relying party's site, and provides information associated with the transactions to the fraud detection service to be evaluated for suspicious activity. …

…

0034 - In order to check for suspicious activity, the fraud detection service may be fed information about each transaction. Using a scoring model or rules, the service, outputs a decision. Each decision, and all the transaction details, may then be saved to a transaction log. Periodically, an Extraction Translation and Loading (ETL) process may be used to calculate some information for a transaction history database. Some details about recent transactions may also be saved directly to the transaction history database (e.g.. simple, easy to calculate information). A scoring engine may also query a database containing information from external sources (such as IP geolocation data, GPS data, Home Location Register data, calling and called telephone (land-based and/or cellular) data, etc.) that can be used to enhance decisions.

…

0040 - In order to detect fraud, the fraud detection service needs to collect enough information about each transaction to make a reasonable guess. In order to capture broad enough information, the following fields that can be used: Token serial number (or token group ID); Token Type (OTP, PKI, etc.); Time of transaction; IP address of token user; Web site/System the user is trying to access; transaction the user is attempting (i.e, login, purchase, stock, trade, etc.); approximate transaction value; result of authentication attempt (good or bad OTP, good or bad PIN, wrong site, etc.)

0041 - The fraud detection service also needs to capture deep enough information. This means producing a

historical record of transactions, going back to at least 90 days and preferably for a year, for example. …

0042 - The fraud detection service analyses a transaction by a policy engine and, depending on the policy, is passed through an anomaly engine which answer with a status (anomaly or not) and a confidence factor (how much the engine is confident in its decision) that is processed back by the policy engine. …

…

0044 – In addition to providing functionality around setting filters based around how confident the engine is in the decision, the fraud detection service may use its determinations for further increasing accuracy. For example, if a transaction is tagged an anomalous, even with a high anomaly score and a confidence factor, the system can increase its accuracy by comparing the transaction against a cluster of known fraudulent transactions or known "not" fraudulent transactions.

…

0052 - This enables the engine to perform fraud detection at early stages of the data collection, without generating false positives or false negatives. In each execution level, the minimum number of transactions, similarity threshold, confidence factor and the participating attributes can be defined.

*Id.* at pp. 3-11. In that regard, the VeriSign Patent details the exact type of user in-session, post login ESI data that the Trust requested but Schwab never produced.

Not only did Schwab have a fraud detection system that generated data for post login activities of its users as early as 2013, when the Trust began trading on the Platform, as corroborated by the VeriSign Patent, but Schwab also added to the system subsequent thereto. In 2015, for example, Schwab secured a patent entitled

"*System and Method for Authenticating Users Using Weak Authentication Techniques, With Differences for Different Features,*" Publication No. US-11288346-B1, with an application date of March 3, 2015 (the "2015 Patent"), attached to Motion as Exhibit "4". The "Abstract" section of the patent identifies the patent as "[a] system and method [that] uses different authentication techniques … to authenticate users by generating a score and comparing it to a threshold selected according to the feature [of the Platform] the user is requesting." *Id.* at p. 1. In that regard, per the 2015 Patent, the Platform generates scores throughout the user's session on the Platform; not simply at the point of login; and it stores the data collected. *Id.*

Further, in 2018, Schwab secured a patent entitled *System and Method for Handling User Request for Web Services*," Publication Number US-10645086-B1, with an Application Date of January 2, 2018 (the "2018 Patent"), attached to Motion as Exhibit "5". In the section of the 2018 Patent entitled "Background of the Invention," wherein Schwab describes why it invented the system, Schwab writes, "a better system and method for detecting and handling replay attacks is needed." [4] *Id.* at p. 8, column #1. The 2018 Patent, too, describes the mechanism

---

[4] A replay attack is an attack that involves the capture of transmitted authentication or access control information and its subsequent retransmission with the intent of producing an unauthorized effect or gaining unauthorized access. *See U.S. Department of Commerce, National Institute of Standards and Technology, Glossary.*

by which the Platform monitors in-session activities of its users and generates data, generates scores and stores the data related to those activities; the type of in-session, post login ESI data that Schwab failed to produce during the course of discovery.  *Id*. at pps. 1-6.

Notably, Eastman's statements, the VeriSign Patent, the 2015 Patent and the 2018 Patent contradict statements made by Schwab during the discovery process, "that it was not aware of how it would be able to track a 'session termination session' …."  *Marinzel Decl.*, at § 24.  The VeriSign Patent, for example, explains how the system tracks session terminations and then saves the transaction details to a transaction log and/or a transaction history database.  *See VeriSign Patent,* pps. 5-7, 9-11; *see also the 2015 Patent*, pps. 1-7.  Additionally, per the 2018 Patent, a session is terminated when a "malicious party" steals and uses the credentials of an actual customer of Schwab to trade on the Platform.  The Platform generates scores related that transaction and saves and stores that data.  *See 2018 Patent*, p. 6.

In this regard, Eastman's statements, the VeriSign Patent, the 2015 Patent and the 2018 Patent also contradict Schwab's declarations and repeated representations that it "did not withhold documents, information, reports or ESI from security systems that monitor and effect user sessions after login …"; and that it "had not withheld relevant documents or information which the Panel ordered it to produce."  A-368-72, ¶¶ 26, 28 and 39. On the other hand, Eastman's

statements, the VeriSign Patent, the 2015 Patent and the 2018 Patent substantiate Baker's testimony that it is "inconceivable" that Schwab did not have In-Session (post login) Activity ESI related to the Trust's trading activities.

Eastman's statements, as well as the aforementioned Patents, confirm that the District Court erred. It misinterpreted the Konstantinides Declaration to read that "fraud parameter reports related to activity within a session do not exist." The Konstantinides Declaration makes no such representation; nor can one reasonably infer such from the document. Therefore, the Panel did exclude evidence pertinent and material to the Trust's case and deprive it of its right to a fundamentally fair Hearing and the District Court erred in confirming that decision.

The *Tempo Shain Corp. v. Bertek, Inc*. matter is instructive. In *Tempo Shain* this Court reversed the district court's denial of a petition to vacate an arbitration award involving a fraudulent inducement claim because the panel excluded testimony that was relevant to the claim. 120 F.3d at 20. Similar to the facts in *Tempo Shain*, in this case, the District Court upheld the Panel's wrongful exclusion of evidence pertinent and material to the Trust's case - evidence related to Schwab's security systems that monitor and effect user sessions after login. The exclusion of the evidence deprived the Trust of its rights to a fundamentally fair Hearing because the evidence would have supported Baker's opinion that Schwab's security systems, such as its FDS, caused the Interruptions.

Last, citing (a) the various motions Schwab forced the Trust to file due to Schwab's consistently, woefully deficient responses to the Discovery Requests; (b) the related orders; and (c) the three (3) witnesses the Trust presented at the Hearing, the District Court found that the Trust had an "adequate opportunity to present its evidence and argument …." A-1291-1304. However, the District Court erred. When the Panel denied the Trust access to and thereby refused to hear evidence related to post login session activity ESI, including the FDS used by Schwab, the Panel deprived the Trust of its opportunity to present the evidence and arguments pertinent and material to its case.

In this case, the Trust was in an unenviable position. The evidence relevant and pertinent to its case was in the sole and exclusive possession of Schwab.

As the Trust has stated throughout this litigation, the crux of its evidence and arguments was in the analysis of post login session activity ESI, including the FDS used by Schwab: evidence within the sole and exclusive possession of Schwab. The Panel denied the Trust the opportunity to present this evidence when it misinterpreted the Konstantinides Declaration to affirm that, "fraud parameter reports related to activity within a session do not exist." At that point, the Panel thwarted any opportunity for the Trust to present evidence in support of its claims. While the Trust called witnesses at the Hearing, the witnesses were forced to testify without the benefit of the information that the Panel denied the Trust access

to and refused to hear.  The Trust could not have enjoyed an adequate opportunity to present its evidence and arguments if the Panel denied it the evidence required to present its evidence and arguments.

The District Court criticized the Trust for failing to question Konstantinides on what it characterized as the "'so-called fraud detection system' and the existence of any In-Session Activity ESI."  A-1303.  However, as a part of its *Letter Motion for Order of Production*, the Trust proposed to question Konstantinides, whom Schwab declined to make available.   A-317.   The Panel denied the Motion.  A-1139-40.

## VI.  <u>CONCLUSION</u>

For the foregoing reasons, the Trust respectfully requests that this Court

vacate the Award and reverse the District Court's decision in its entirety.

Respectfully submitted,

FINEMAN KREKSTEIN & HARRIS, P.C.

By:   <u>/s/ Barry A. Furman</u>
Barry A. Furman, Esquire
Phinorice J. Boldin, Esquire
Rachel Rempel, Esquire
Fineman Krekstein & Harris, P.C.
Ten Penn Center
1801 Market Street, Suite 1140
Philadelphia, PA 19103
(215) 893-9300
bfurman@finemanlawfirm.com
pboldin@finemanlawfirm.com
rrempel@finemanlawfirm.com

*Attorneys for Petitioner-Appellant, The*
*Evan K. Halperin Revocable Living Trust*

Dated: April 28, 2023

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS AND
TYPE STYLE REQUIREMENTS**

This brief complies with the type-volume limitation of Fed. R. App. 32(e), Local Rule 32.1(4)(a), and Fed. R. App. 32(a)(7) because this brief contains 7,639 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using the 2016 version of Microsoft Word in 14-point Times New Roman font.

/s/ Barry A. Furman
*Counsel for Petitioner-Appellant*

Dated: April 28, 2023

**CERTIFICATE OF FILING AND SERVICE**

I certify that on April 28, 2023, I caused the foregoing Brief of Petitioner-Appellant, The Evan K. Halperin Revocable Living Trust, to be (i) transmitted to the Clerk of the United States Court of Appeals for the Second Circuit through the Court's CM/ECF filing system, and (ii) served on the counsel listed below, who are Filing Users, through the CM/ECF system:

Barry S. Gold, Esq.
Andrew J. Melnick, Esq.
Davis Wright Tremaine LLP
1185 Avenue of the Americas, 21st Floor
New York, NY 10036


Dated: April 28, 2023                    */s/ Phinorice J. Boldin*
                                         Phinorice J. Boldin

# SPECIAL APPENDIX

# TABLE OF CONTENTS

PAGE

Opinion and Order of the Honorable P. Kevin Castel,
dated September 19, 2022 ....................................... SPA-1

District Court Judgment, dated September 20, 2022 ................. SPA-20

# SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
EVAN K. HALPERIN REVOCABLE
LIVING TRUST,

                  Petitioner,

             -against-

CHARLES SCHWAB & CO., INC.,

                  Respondent.
------------------------------------------------------x

                        21-cv-8098 (PKC)

                    OPINION AND
                      ORDER

CASTEL, U.S.D.J.

        Petitioner Evan K. Halperin Revocable Living Trust (the "Trust") petitions to vacate an arbitration award rendered against it and in favor of respondent Charles Schwab & Co., Inc. ("Schwab"). Schwab opposes the Trust's petition and brings a cross-petition to confirm the award. Jurisdiction is premised on diversity of citizenship, 28 U.S.C. § 1332(a)(1).[1]

        The arbitration award denied all the Trust's claims against Schwab and awarded Schwab costs and attorneys' fees totaling $142,750.22 (the "Award"). In addition to confirmation of the Award, Schwab also seeks prejudgment interest on the Award and costs and attorneys' fees incurred as a result of its efforts to enforce the Award. Because the Trust has failed meet the "very high" burden to demonstrate that vacatur is appropriate, see D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006), its petition will be denied. Schwab's cross-petition to confirm the Award and its application for prejudgment interest will be granted.

---

[1] The Trust is organized under the laws of the State of New York with its situs in Huntington, New York. (Pet. ¶ 1.) Schwab is incorporated in the State of California and maintains its principal place of business in San Francisco, California. (Id. ¶ 2.) Venue is proper in this District because the arbitration underlying the petition took place in Manhattan, New York. (Id., Ex. 1.)

Schwab's application for costs and fees is provisionally granted pending further submissions to allow the Court to determine the reasonableness of the requested fees.

BACKGROUND

Schwab is a financial services firm, broker-dealer and member of the Financial Industry Regulatory Authority ("FINRA").  (Cross Pet. (Doc 15) ¶ 1.)  Schwab operates schwab.com, which provides an online securities trading platform for its users.  (Pet. (Doc 2) ¶ 7; Cross Pet. ¶¶ 6-9.)  The Trust is a vehicle through which Evan K. Halperin, the Trust's settlor, trustee and beneficiary, trades securities.  (Pet. ¶ 1.)  The Trust has maintained an account at schwab.com since about February 13, 2013.  (Cross Pet. ¶ 6.)  Upon opening an account at schwab.com, the Trust agreed to be bound by the Schwab One Account Agreement, which contains an arbitration agreement.  (Pet., Ex. 2 ("Account Agreement") at 3-4, 6-7.)  The arbitration clause in the Account Agreement provides than any dispute arising from the Account Agreement will be resolved via arbitration conducted by FINRA.  (Id.)

The Trust filed with the FINRA Office of Dispute Resolution its amended Statement of Claim on January 6, 2020, (Pet., Ex. 3 ("Statement of Claim")), which initiated the arbitration underlying the present petition and cross-petition, styled as *Evan K. Halperin Revocable Living Trust v. Charles Schwab & Co., Inc.*, Case No. 19-03738 (the "Arbitration"). (Pet. ¶ 5.)  In the Arbitration the Trust principally alleged that certain security features of the schwab.com trading platform caused the Trust to be logged out of its schwab.com account without explanation while attempting to execute various options trades, and these interruptions in service caused $1,576,140.34 in losses to the Trust for which Schwab is liable. (Statement of Claim at 1-6.)  Schwab filed its Statement of Answer, which denied the Trust's claims, on

February 26, 2020.  (Pet., Ex. 5 ("Statement of Answer").)  The key dispute in the Arbitration

was whether the Trust was logged out of schwab.com due to certain malfunctions or security

features internal to schwab.com and its platforms, or whether the Trust was logged out due to

circumstances internal to the computer used by Mr. Halperin to trade, such as the use of a VPN,

poor internet connectivity, or a session time-out due to inactivity.

   The parties to the Arbitration began the exchange of discovery in March 2020.

(Cross Pet. ¶ 16.)  Over the course of the discovery period, the Trust filed various motions

alleging that Schwab was engaging in discovery abuses and refusing to produce certain

materials, primarily certain electronically stored information ("ESI") generated by what the Trust

described as a "fraud detection system" that purportedly monitors and effects user sessions after

the user logs-in to the trading platform (the "In-Session Activity ESI").  Schwab opposed these

several motions and denied the Trust's repeated allegations that it was withholding discovery.

Because these motions and their resolutions form the basis for the Trust's petition to vacate the

Award, the Court describes them in detail.

The Trust's May 26, 2020 Motion to Compel Discovery and Award Sanctions

   On May 26, 2020, the Trust brought in the Arbitration a motion to compel

discovery and award sanctions, related to purported discovery abuses by Schwab.  (Pet., Ex. 7

("Panel's Order of June 30").)  In particular, the Trust sought an order compelling Schwab to

produce discovery requested by the Trust across two lists of documents: FINRA's Discovery

Guide List 1 (Marinzel Decl., Ex. 7 at 21-27 ("List 1")) and the Trust's Request for Production

of Documents (Marinzel Decl., Ex. 7 at 50-55 ("List 2")).  (Marinzel Decl., Ex. 7 at 1-2.)  In

connection with its May 26 motion to compel, the Trust submitted to the Panel a detailed

memorandum of law arguing its position and provided exhibits of its document requests and the

response and objections by Schwab thereto.  (See Marinzel Decl., Ex. 7 at 3-12.)  In opposition, Schwab submitted its own detailed memorandum of law arguing that it had fully complied with its discovery obligations and that its responses and objections were appropriate. (See Marinzel Decl., Ex. 8.)  On June 30, 2020, the Panel held a conference on the Trust's May 26 motion. (Panel's Order of June 30 at 1.)  Later that day, the Panel granted the Trust's motion in part and ordered that "[Schwab] will provide outstanding discovery to [the Trust] on or before July 30, 2020." (Id. at 2.)

The Trust's July 15, 2020 Motion to Supplement and/or Clarify

On July 15, 2020, the Trust filed a letter motion to "Supplement and/or Clarify" the Panel's Order of June 30.  (Pet. ¶ 10; Pet., Ex. 9 ("Trust's Motion to Clarify").)  In this letter motion, the Trust argued that Schwab's responses and objections to the Trust's requests for production of documents still did not comply with certain procedural FINRA rules, and the Trust requested that the Panel order Schwab to amend and restate its responses and objections. (Trust's Motion to Clarify at 1-3.)  In its letter, the Trust recognized that its motion may be premature because it was filed before Schwab's July 30, 2020 deadline to provide outstanding discovery to the Trust as ordered by the Panel on June 30, 2020, but argued that it was in the interest of efficiency for the Panel to consider the Trust's request before the Schwab's July 30 deadline to provide discovery.  (Id.)  In an order dated July 28, the Panel denied the Trust's Motion to Clarify, which it characterized as "frivolous and an abuse of the discovery process" because "[a] motion to compel is without basis or justification when filed by a party before the date that the other party is required to produce documents and information."  (Pet., Ex. 10 ("Panel's Order of July 28") at 2.)

4

<u>The Trust's Three September 9, 2020 Motions</u>

The Trust claims that on July 30, 2020, "Schwab produced some documents, purportedly in response to the June 30th order" but "continued to withhold important evidence." (Pet. ¶ 13.)  On September 9, 2020, the Trust filed three new motions with the Panel.  (<u>Id.</u> ¶ 14.) Two of the motions were motions to compel the production of discovery, and the third was a motion to sanction Schwab for its alleged discovery abuses.  (<u>Id.</u>; Pet., Exs. 12, 13 & 14.)  The Trust's two September 9 motions to compel again argued that Schwab's responses and objections to List 1 and List 2 were insufficient and that it was withholding discovery.  The Trust principally took issue with Schwab's failure to produce In-Session Activity ESI.  (<u>See</u> Pet., Exs. 12 & 13.)  Schwab opposed the motion, arguing that it had produced the discovery in accordance with the Panel's Order of June 30 and complied with FINRA rules in its responses and objections to the Trust's discovery requests. (Marinzel Decl., Ex. 18.)  Schwab provided a detailed, step-by-step recounting of the Trust's requests, Schwab's responses, and the discovery produced in response to the Trust's requests and the Panel's Order of June 30, 2020.  (<u>Id.</u>)  Schwab also argued that it was impossible to produce some of the discovery requested by the Trust without first receiving further information from the Trust that the Trust had not provided, such as a range of dates for when the Trust's alleged service interruptions on schwab.com occurred.  (<u>Id.</u>)

On December 16, 2020, the Panel held a telephone conference on the Trust's three September 9 motions.  (Pet., Ex. 5 ("Panel's Order of December 22, 2020") at 1.)  On December 22, 2020, the Panel issued an order partially granting the Trust's motions.  (<u>Id.</u> at 2.) In particular, the Trust's two motions to compel were granted in part, and Schwab was ordered to produce discovery in connection with some, but not all, of the items on both List 1 and List 2 to which Schwab had previously objected.  (<u>Id.</u>)  The Panel restricted the relevant date range for the

production to "the year 2018 only." (Id.)  The Panel also ordered the parties to meet and confer

to discuss narrowing the scope of disputed dates of trades in connection with one of the Trust's

document production requests, and the Trust's motion for sanctions was withdrawn without

prejudice.  (Id.)  The order barred the parties from filing additional discovery motions after April

8, 2021.  (Id.)

The Trust's March 12, 2021 Motion to Enforce the Panel's Order of December 22, 2020

On March 12, 2021, the Trust filed a motion requesting that the Panel "enter an

order warning Schwab that, unless it complies with the Order of December 22, 2020, . . . the

Panel shall . . . dismiss with prejudice all of Schwab's asserted and potential defenses" and

impose sanctions against Schwab.  (Pet., Ex. 16 at 1-2.)  On March 22, 2021, Schwab submitted

a memorandum in opposition to the Trust's motion, in which Schwab argued that it had complied

with the Panel's Order of December 22, 2020 and all of its other discovery obligations and

detailed its production of certain ESI to the Trust.  (Marinzel Decl., Ex. 21 at 1-10.)  In an order

dated April 21, 2021, the Panel denied the Trust's March 12 motion.  (Pet. Ex. 17 at 1-2.)

The Trust's May 7, 2021 Motion for an Order of Production

On May 7, 2021, the Trust again filed a motion, this time moving for an "Order of

Production" that compelled Schwab to "produce its custodians of records to appear at the hearing

and produce the very same documents the Panel ordered Schwab to produce on December 22,

2020." (Pet., Ex. 18 at 1.)  This motion was a second attempt by the Trust to compel Schwab to

produce at the Arbitration hearing the discovery from List 1 and List 2 described in the Panel's

Order of December 22, 2020, specifically the In-Session Activity ESI, that the Trust contends

Schwab "continues to willfully, and selectively, withhold." (Id. at 5.)  In its memorandum in

opposition to the Trust's motion, Schwab continued to assert that it was in full compliance with

the Panel's Order of December 22, 2020, and argued that the Trust failed to specify why the

appearance of the requested witnesses is relevant or necessary and affirmed that it will comply

with FINRA Rule 12514(b), which requires authentication witnesses at an arbitration hearing for

all documents, information and data produced in discovery. (Marinzel Decl., Ex. 26 at 2-5.)

     In an order dated June 24, 2021, the Panel denied the Trust's motion for an order

of production, but directed Schwab to "provide [the Trust] with a Declaration/Affirmation

affirming that fraud parameter reports related to activity within a session do not exist."  (Pet., Ex.

19 at 2.)  On July 2, 2021, Schwab filed in the Arbitration a declaration by Kostas

Konstantinides, a Schwab employee with the title Director of Client Authentication, in response

to the Panel's Order of June 24, 2021.  (Marinzel Decl., Ex. 29 (the "Konstantinides

Declaration").)

The Trust's July 8, 2021 Letter Motion

     On July 8, 2021, the Trust submitted a letter motion to the Panel requesting that

"the Panel determine on the first scheduled hearing day . . . that Schwab did not comply with the

Panel's Order of June 24, 2021[.]"  (Pet., Ex. 20 at 1.)  The Panel announced during the

Arbitration hearing its decision to deny the Trust's letter motion.  (Pet. ¶ 18.)  The Trust

continues to contend that the Konstantinides Declaration did not comply with the Panel's Order

of June 24, 2021.  (Pet. ¶ 18.)

The Arbitration Hearing

     From July 12 through July 16, 2021, the Panel conducted an in-person arbitration

hearing.  (Cross Pet. ¶ 21.)  The hearing included oral argument, fact witnesses, expert witnesses,

and exhibits presented by both Schwab and the Trust.  (Id.)  The Trust called three witnesses:

Kevin J. Baker, Edward M. Waddington and Mr. Halperin.  (Id. ¶ 22.) Mr. Baker and Mr.

Waddington, both of Marcum LLC, an accounting firm that engages in digital forensics, were expert witnesses for the Trust.  (Id.)

On August 30, 2021, FINRA served the parties the Panel's Award.  (Pet., Ex. 1.) The Award concluded as follows:

> After considering the pleadings, the testimony and evidence presented at the hearing, and any post-hearing submissions, the Panel has decided in full and final resolution of the issues submitted for determination as follows:
>
> 1. Claimant's claims are denied in their entirety.
>
> 2. Claimant is liable for, and shall pay to Respondent, the sum of $100,000.00 in attorneys' fees. The Panel awarded attorneys' fees as both parties requested attorneys' fees.
>
> 3. Claimant is liable for, and shall pay to Respondent, the sum of $42,750.22 in costs.
>
> 4. Any and all claims for relief not specifically addressed herein, including any requests for punitive damages, are denied.

The Panel also assessed hearing session fees in the amount of $22,500 to be paid by the Trust. (Id.)

On September 30, 2021, the Trust filed its petition seeking vacatur of the Award pursuant to section 10 of the Federal Arbitration Act ("FAA").  On December 17, 2021, Schwab cross-moved for confirmation of the Award and attorney's fees.

DISCUSSION

I.   The Clerk's Certificate of Default as to Schwab is Vacated.

Before addressing the merits of the petition and cross-petition, the Court addresses a confounding filing by the Trust.  On September 7, 2022 – more than 7 months after the petition and cross-petition had been fully briefed by both parties – the Trust filed a proposed

certificate of default (Doc 49) and supporting affidavit (Doc 48), asserting that "[Schwab] has not responded to, nor replied to, or otherwise moved with respect to, Petitioner's first ground for relief, and has not denied Petitioner's first ground for relief."  (Doc 49 at 1-2.)  That same day, the Clerk of Court entered a certificate of default as to Schwab with respect to the Trust's first ground for relief.  (Doc 50.)

 The certificate of default as to Schwab will be vacated.  Counsel for the Trust represents in his affidavit – under penalty of perjury – that "[Schwab] has never responded, and therefore has not denied, Petitioner's First Ground, that the Panel denied the Trust evidence essential to proving its case and Respondent never produced such evidence."  (Doc 48 ¶ 12.)  This assertion is demonstrably untrue.  Schwab's submissions (Docs 15, 16 & 38) are all principally dedicated to defending against the Trust's allegations that "the Panel denied the Trust evidence essential to proving its case" in the Arbitration and that Schwab "never produced such evidence."  (See, e.g., Cross Pet. ¶¶ 27-31.)

## II.  The Trust's Motion to Strike the Marinzel Declaration is Denied.

 The Trust moves to strike the Marinzel Declaration and exhibits thereto (Doc 18) pursuant to Rule 12(f), Fed. R. Civ. P.  (Doc 30.)  Under Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

 In support of its motion, the Trust states in a conclusory manner that the Marinzel Declaration is "immaterial and extraneous" and "abhors the record."  (Doc 30 ¶ 8.)  The Trust points to no specific paragraphs or exhibits within the Marinzel Declaration supporting these contentions.  The Marinzel Declaration includes several exhibits – for example, Schwab's several memoranda in opposition to the Trust's several discovery motions – that are absent from

the Trust's petition and declarations in support thereof but are part of the record that was before the Panel. (See, e.g., Marinzel Decl., Exs. 7, 8, 18, 21, 26 & 29.) Because all exhibits attached to the Marinzel Declaration were before the Panel during the Arbitration, the declaration and its exhibits are properly considered as part of the record in this case. See D.H. Blair, 462 F.3d at 109-10. The Trust's motion to strike the Marinzel Declaration will be denied.

A court "treat[s] a petitioner's application to confirm or vacate an arbitral award as akin to a motion for summary judgment." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 136 (2d Cir. 2011) (internal quotation marks omitted). Accordingly, the Court's decision is based on the record before it, specifically, the Trust's petition to vacate, Schwab's cross-petition to confirm, the exhibits attached to those petitions and the parties' supporting declarations and exhibits thereto. See D.H. Blair, 462 F.3d at 109-10.

### III. The Trust's Petition to Vacate the Award is Denied and Schwab's Cross-Petition to Confirm the Award is Granted.

"'[T]o avoid undermining the twin goals of arbitrations, namely, settling disputes efficiently and avoiding long and expensive litigation,' arbitral awards 'are subject to very limited review'." Zurich American Ins. Co. v. Team Tankers A.S., 811 F.3d 584, 588 (2d Cir. 2016) (quoting Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir.1993)). "The role of a district court in reviewing an arbitration award is 'narrowly limited' and 'arbitration panel determinations are generally accorded great deference under the [FAA].'" Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 103 (2d Cir. 2013) (quoting Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 19 (2d Cir. 1997)). "Consequently, the burden of proof necessary to avoid confirmation of an arbitration award is very high, and a district court will enforce the award as long as 'there is a barely colorable justification for the outcome reached.'" Id. at 103–04 (quoting Rich v. Spartis, 516 F.3d 75, 81

(2d Cir. 2008)).  "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case."  <u>D.H. Blair</u>, 462 F.3d at 110.

The FAA provides limited grounds for vacating an arbitration award.  9 U.S.C. § 10(a).  The Trust challenges the award under sections 10(a)(3) and 10(a)(2) of the FAA, which as relevant here provide that the district court may vacate an award "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy," 9 U.S.C. § 10(a)(3), or "where there was evident partiality or corruption in the arbitrators," 9 U.S.C. § 10(a)(2).

The Trust argues that the Panel's denial of its several discovery motions and refusal to compel Schwab to produce certain materials in discovery, in particular the In-Session Activity ESI, constitutes a "refus[al] to hear evidence pertinent and material to the controversy" within the meaning of section 10(a)(3).  Vacatur under section 10(a)(3) is warranted only where an arbitrator's "misconduct" violates "fundamental fairness."  <u>Tempo Shain Corp. v. Bertek, Inc.</u>, 120 F.3d 16, 20 (2d Cir. 1997).  Arbitrators maintain "great latitude to determine the procedures governing their proceedings and to restrict or control evidentiary proceedings."  <u>Supreme Oil Co. v. Abondolo</u>, 568 F. Supp. 2d 401, 408 (S.D.N.Y. July 31, 2008).  Section 10(a)(3) has been "narrowly construed so as not to impinge on the broad discretion afforded arbitrators to decide what evidence should be presented."  <u>Doscher v. Sea port Group Securities, LLC</u>, 15-cv-384, 2017 WL 6061653, at *3 (S.D.N.Y. Dec. 6, 2017) (internal citations omitted).  As part of that broad discretion, for example, an arbitrator "need not follow all the niceties observed by the federal courts" in making evidentiary determinations.  <u>Bell Aerospace Co. Div. of Textron, Inc. v. Local 516 UAW</u>, 500 F.2d 921, 923 (2d Cir. 1974).

11

The Trust has not met the "very high" burden necessary to vacate the Award. There is no indication from the record that the Trust's lack of success on its several motions and at the Arbitration hearing deprived it of "fundamental fairness."

The Trust takes issue with its motions that the Panel denied, which it claims deprived it of evidence vital to proving its case, principally the In-Session Activity ESI. The first of the Trust's motions denied by the Panel was the Trust's July 15, 2020 motion to clarify. The Trust, however, recognized in its memorandum in support of the July 15 motion that the motion may be premature because it was filed prior to Schwab's July 30, 2020 deadline to provide outstanding discovery to the Trust. The Panel did indeed deny the motion as premature. This does not indicate fundamental unfairness in the Arbitration.

Next, the Panel denied the Trust's March 12, 2021 motion to enforce the Panel's Order of December 22, 2020. The Panel's Order of December 22, 2020 directed Schwab to respond to certain items on List 1 and List 2, which in the Trust's view included the In-Session Activity ESI. Schwab responded with a memorandum in opposition to the motion, in which it extensively detailed the ESI it had produced to the Trust to comply with the Panel's Order of December 22, 2020 and asserted that it does not maintain a "fraud detection system" that records In-Session Activity ESI as described by the Trust. According to Schwab, the ESI produced included, among other things, (i) "Login Data (FRA) Report" which is "basic back-end login record created by Schwab's Fraud Research App" and contained "login date and time, customer ID, IP address, location, language, transaction ID, device ID, user agent, session ID, domain, and channel," (ii) "RBA Report" which "tracks user authentication by date, time, IP address, city, country, user account, internet service provider name, user agent type, user agent operating system, user language, and user agent" and also contains the user's "score" where a "negative

score indicates that the user has been authenticated (a.k.a. not blocked or limited)" and (iii) "Click-By-Click User Activity Data" which "shows the date, time, user ID, account number, IP address, platform, and the details of each landing page visited by the user." (Marinzel Decl., Ex. 21 at 3-4.) Schwab stated that this ESI constituted "complete user session information for Mr. Halperin for 2018[.]" (Id. at 3.) That the Panel was ultimately persuaded that Schwab had complied with the December 22, 2020 order and denied the Trust's motion does not speak of fundamental unfairness or misuse of the Panel's "broad discretion" over discovery issues.

The Trust's May 7, 2021 motion for an order of production was another attempt to persuade the Panel that Schwab had not complied with the Panel's Order of December 22, 2020, and this time the Trust requested that the Panel order Schwab to "produce its custodians of records to appear at the hearing and produce the very same documents the Panel ordered Schwab to produce on December 22, 2020." (Pet., Ex. 18 at 1.) Schwab again opposed this motion, arguing, among other things, that the motion was the Trust's attempt to relitigate the denial of the Trust's March 12, 2021 motion to enforce, that the Trust has failed to specify why the appearance of such witnesses would be relevant to the case itself rather than merely relevant to the Trust's theory that Schwab was withholding discovery, and that it had already represented that it would comply with FINRA Rule 12514(b) which requires authentication witnesses for all documents, information and data which it had produced. (Marinzel Decl., Ex. 26 at 4-5.) In the Panel's Order of June 24, 2021, it denied the Trust's motion but ordered Schwab to provide "a Declaration/Affirmation affirming that fraud parameter reports related to activity within a session do not exist." (Pet., Ex. 19 at 2.) On July 2, 2021, Schwab supplied the Konstantinides Declaration in response to the Panel's Order of June 24. (Konstantinides Declaration at 1-2.) The Panel's decision to require Schwab to represent in a declaration, under the penalty of

perjury, that it does not maintain the specific ESI sought by the Trust speaks to the Panel's careful consideration of the evidentiary issue at hand, rather than any fundamental unfairness.

Prior to the Arbitration hearing, the Trust filed its July 8, 2021 letter motion, the final motion relevant to this petition for vacatur. The Trust's July 8, 2021 letter motion requested that "the Panel determine on the first scheduled hearing day . . . that Schwab did not comply with the Panel's Order of June 24, 2021[.]" (Pet., Ex. 20 at 1.) The Panel announced during the Arbitration hearing its decision to deny the Trust's letter motion. (Pet. ¶ 18.)

The Trust sought for analysis by its expert data from a purported "fraud detection system" that monitors and records In-Session Activity ESI. Schwab asserted that it does not maintain a so-called "fraud detection system" that records the In-Session Activity ESI sought by the Trust but it had produced, in full response to the Trust's production requests, substantial other ESI from its security systems that monitor a user's activity and log-on/log-off records, including the FRA Report, the RBA Report and the Click-By-Click User Activity Data for the Trust's account for the year 2018. Schwab submitted the Konstantinides Declaration wherein Konstantinides, under the penalty of perjury, attested to the fact that Schwab does not maintain a so-called "fraud detection system" that records the specific ESI sought by the Trust. The Trust could have called Konstantinides as a witness at the Arbitration hearing to examine him on his knowledge of a so-called "fraud detection system" and the existence of any In-Session Activity ESI, but failed to do so.

The Panel did not "refus[e] to hear evidence pertinent and material to the controversy" by not compelling Schwab to produce In-Session Activity ESI that it represented in a declaration, under penalty of perjury, does not exist. The Panel also gave the Trust more than "an adequate opportunity to present its evidence and argument" by entertaining the Trust's

various discovery motions and allowing it to call witnesses, make argument and present evidence at the Arbitration hearing.  The Trust's dissatisfaction with the Panel's rulings and the Award does not render the Arbitration fundamentally unfair within the meaning of section 10(a)(3).  Accordingly, the Trust's motion to vacate the Award under section 10(a)(3) will be denied.

The Trust's second ground for vacatur of the Award is under section 10(a)(2) of the FAA, which allows for vacatur "where there was evident partiality or corruption" in the members of the arbitration panel.  "Evident partiality may be found only where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotations omitted).

The Trust's argument in support of a finding of the Panel's "evident partiality" is, in sum and substance, that because the Panel consistently decided the Trust's discovery motions in Schwab's favor and did not find Schwab liable to the Trust in the Arbitration, the Panel must be biased in favor of Schwab.  (Pet. at 8; Doc 16 at 11; Doc 27 at 13-15.)  "[An arbitration] panel's decision not to order the production of certain documents . . . does not support an inference of bias." Polin v. Kellwood Co., 103 F.Supp.2d 238, 260 (S.D.N.Y. June 29, 2000).  "Bias is not even established by showing that an arbitrator consistently agrees with the arguments of one side and repeatedly finds in their favor." Id. (citing Bell Aerospace Co. v. Local 516 Int'l Union, United Auto., Aerospace & Agric. Implement Workers, 500 F.2d 921, 923 (2d Cir. 1974)).

The Trust provides no evidence beyond the Panel's denial of several of its motions and Schwab's ultimate success in the Arbitration to support its claim of the Panel's "evident partiality" in favor of Schwab.  The Panel granted at least in part several of the Trust's

discovery motions that Schwab opposed, including the May 26, 2020 motion to compel and the two September 9, 2020 motions to compel.  The Trust notes that "the Panel mischaracterized the Trust's Motion to Clarify as a motion to compel" and "warned that the Panel would sanction the Trust for filing frivolous discovery motions" but "never warned Schwab that it would sanction Schwab."  (Pet. at 8.)  Misstating the title of a motion and admonishing the Trust for filing a motion prematurely hardly indicate "evident partiality" within the Panel.

As previously discussed, the record indicates that the Panel carefully considered argument and evidence from both parties in deciding the Trust's several motions and in conducting the Arbitration hearing.  When the Trust continually sought to compel Schwab to produce certain discovery that Schwab maintained did not exist, the Panel ordered Schwab to submit a declaration attesting to that fact under the penalty of perjury.  Fundamental fairness does not mean that a party must win a minimum percentage of motions.  Nothing in the record speaks of the Panel's "evident partiality" in favor of Schwab, and the Trust's petition to vacate the award under section 10(a)(2) will be denied.

"[A] court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11" of the FAA.  Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 582 (2008) (quoting 9 U.S.C. § 9).  The Trust "has identified no basis" sufficient to vacate the award, Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d 60, 78–79 (2d Cir. 2012), and for reasons described above, there is at least "a barely colorable justification for the outcome reached."  D.H. Blair, 462 F.3d at 110 (internal quotations omitted).  Accordingly, the Trust's petition to vacate is denied, and Schwab's cross-petition to confirm the award is granted.

IV. <u>Schwab's Application for Prejudgment Interest, Costs and Attorneys' Fees is Granted.</u>

      Schwab seeks prejudgment interest on the $142,750.22 monetary portion of the Award at a rate of nine percent per annum from August 30, 2021, and costs and attorneys' fees incurred as a result of its efforts to enforce the Award.

      "The decision whether to grant prejudgment interest in arbitration confirmations is left to the discretion of the district court." <u>SEIU v. Stone Park Assocs., LLC</u>, 326 F.Supp.2d 550, 555 (S.D.N.Y. July 22, 2004).  There is a presumption in favor of prejudgment interest on a motion to confirm an arbitration award.  <u>Waterside Ocean Navigation Co. v. Int'l Navigation Ltd.</u>, 737 F.2d 150, 154 (2d Cir. 1984).  Prejudgment interest is appropriate where the agreement between the parties states that an arbitration decision is final and binding.  <u>See, e.g.</u>, <u>First Cap. Real Estate Investments, L.L.C., v. SDDCO Brokerage Advisors, LLC</u>, 355 F.Supp.3d 188, 197-98 (S.D.N.Y. Feb. 13, 2019).  It is standard within the Second Circuit to grant interest at a rate of nine percent per annum, the rate of prejudgment interest under New York State law.  <u>SEIU</u>, 326 F.Supp.2d at 550.

      The arbitration clause within the Account Agreement states that "[a]ny award the arbitrator makes shall be final and binding[.]"  (Account Agreement at 4.)  The Trust makes no argument in its briefs that Schwab is not entitled to prejudgment interest on the Award and therefore does not overcome the presumption in favor of prejudgment interest.  Accordingly, Schwab is awarded prejudgment interest on the $142,750.22 monetary portion of the Award at the rate of nine percent per annum from August 30, 2021, the date the Award was entered, for a total of $164,123.64.

      Schwab also seeks costs and attorneys' fees in connection with its efforts to enforce the Award.  "The general rule in the United States is that each party must pay its own

legal fees." Cob Shipping Canada Inc. v. Trans Mktg. Houston, Inc., 93-cv-0033, 1993 WL 300043, at *6 (S.D.N.Y. Aug. 4, 1993).  "However, it is well settled that '[a]n exception to this rule is the existence of an agreement between the parties that legal fees are recoverable.'"  Id. (quoting Trans–Asiatic Oil, Ltd. S.A. v. UCO Marine Int'l, Ltd., 618 F.Supp. 132, 137 (S.D.N.Y. July 31, 1985)).  Here, the Account Agreement states that "[a]ny costs, fees or taxes involved in enforcing the award shall be fully assessed against and paid by the party resisting enforcement of said award."  (Account Agreement at 4.)  Because the Trust was the party resisting enforcement of the Award, Schwab is entitled to costs and attorneys' fees.  Schwab's request for costs and attorneys' fees will be provisionally granted, subject to the submission within 14 days of evidentiary support for its claim of attorneys' fees and costs.  See Millea v. Metro-North R.R. Co., 658 F.3d 154, 166-67 (2d Cir. 2011).

CONCLUSION

The Clerk's certificate of default as to Schwab (Doc 50) is VACATED.  The Trust's motion to strike the Marinzel Declaration (Doc 30) is DENIED.  The Trust's petition to vacate the Award (Doc 2) is DENIED.  Schwab's cross-motion to confirm the Award (Doc 12) is GRANTED.  The Clerk shall enter final judgment for Respondent Schwab in the amount of $164,123.64.  Schwab is awarded attorneys' fees and costs in an amount to be determined.  Schwab shall file evidentiary support for its claimed attorneys' fees and costs, including hours expended and hourly rates, 14 days hereof.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
        September 19, 2022

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
EVAN K. HALPERIN REVOCABLE
LIVING TRUST,

                                    Petitioner,                          21 **CIVIL** 8098 (PKC)

            -against-                                                    **JUDGMENT**

CHARLES SCHWAB & CO., INC.,
                                    Respondent.
----------------------------------------------------------X

        It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons

stated in the Court's Opinion and Order dated September 19, 2022, the Trust's motion to strike the

Marinzel Declaration is DENIED. The Trust's petition to vacate the Award is DENIED. Schwab's

cross-motion to confirm the Award is GRANTED. Final judgment is entered for Respondent

Schwab in the amount of $164,123.64.

**Dated**: New York, New York
            September 20, 2022

                                                            **RUBY J. KRAJICK**
                                                    _____
                                                            **Clerk of Court**
                                            **BY:**        _K. Mango_
                                                    _____
                                                            **Deputy Clerk**